Justin T. Toth (8438)
Katherine E. Priest (14758)
**RAY QUINNEY & NEBEKER P.C.**
36 South State Street, Suite 1400
Post Office Box 45385
Salt Lake City, UT 84145-0385
Phone: (801) 532-1500
jtoth@rqn.com
kpriest@rqn.com
*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| JOSH METTLE,<br><br>    Plaintiff,<br><br>vs.<br><br>LUMINATE HOME LOANS, INC.,<br><br>    Defendant. | **COMPLAINT**<br><br>Case No. 2:25-cv-00388<br><br>Judge:<br><br>Magistrate Judge: |

Plaintiff Josh Mettle ("Mettle") hereby complains against Defendant Luminate Home Loans, Inc. ("Luminate" or "Defendant"), and alleges as follows:

**STATEMENT OF CASE**

Mettle served as a branch and divisional manager for Defendant Luminate from December 2022 through January of 2025. In his management roles, Mettle was contractually entitled to payment of excess branch reserve funds and commissions based on total branch production. Luminate failed to properly compensate Mettle pursuant to Mettle's Employment Agreement, despite Mettle (and the branch he managed) meeting all criteria for payout of branch reserve funds and total branch production.

## PARTIES, JURISDICTION & VENUE

1. Plaintiff Josh Mettle is an individual domiciled in Salt Lake City, Utah.

2. On information and belief, Defendant Luminate is a Minnesota corporation with its principal place of business in Minnesota.

3. This Court has jurisdiction under 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 and Mettle and Luminate are citizens of different states.

4. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Mettle's claims occurred in this district.

## FACTUAL ALLEGATIONS

5. Luminate is, in relevant part, a mortgage lender that offers real estate financing, and related services, through several branches and hundreds of loan originators across the country.

6. Mettle is a mortgage professional with decades of experience and is a thought-leader on matters of mortgage lending, personal finance, and market adaptability. In 2020, he was recognized in the top 1% of mortgage originators.

7. Luminate hired Mettle as a branch manager in December 2022.

8. Mettle and Luminate entered into an Employment Agreement (attached as **Exhibit A**) with Luminate in connection with his hiring as branch manager.

9. Among other things, the Employment Agreement provides that Mettle was responsible for the branch's day to day operations, ensuring loans were issued per company policies, maintaining necessary documentation, overseeing branch expenses, hiring and training

other loan originators, and ensuring all branch employees were properly licensed to originate loans. (*See* Ex. A, § I.A.)

10. On top of his salary, the Employment Agreement provides that Mettle was eligible for a commission based on loan amounts he originated for a given month, as well as an override compensation based on the total loan amounts originated at his branch. (*See* Ex. A, §§ II.B, II.C, II.D.)

11. The Employment Agreement also provides that Luminate would maintain a reserve account for the branch. (Ex. A, § IV.)

12. The Employment Agreement does not state the required minimum reserve amount to be maintained. (*See* Ex. A, § IV.)

13. The Employment Agreement further states:

> Upon termination, in the event that [Mettle] provides at least thirty (30) days' notice of termination, does not violate any material terms or conditions of this Agreement, and does not violate any fiduciary duty owed to the Company, [Mettle] will be paid the reserve less any contingent or fixed liabilities that arose out of the Branch's operation while Manager was responsible for supervising the Branch.

(Ex. A, § IV.)

14. Mettle and Luminate subsequently executed an Addendum (attached as **Exhibit B**) to the Employment Agreement, effective October 1, 2024. The Addendum set new percentage points for Mettle's commission and override compensation. (*See* Ex. B at p. 1.)

15. As to Mettle's override compensation, the Addendum provides that Mettle was entitled to an override commission of 50 basis points (0.5%) on total branch production.

16. The Addendum provides that Mettle was entitled to severance pay upon the conclusion of his employment, based on the amount remaining in the branch's Operating Reserve Account at the time of Mettle's resignation or termination. (Ex. B at ¶ 4.)

17. Mettle satisfied the terms of the Employment Agreement and the Addendum, entitling him the severance payment detailed in paragraph 4(b) of the Addendum.

18. In January of 2025, Mettle resigned his employment with Luminate.

19. In the moth preceding Mettle's resignation, Mettle's branch originated a total loan amount of $3,801,629.00.

20. Pursuant to the Addendum and the total loan amount originated in January of 2025, Mettle is entitled to $19,008.14 in override compensation.

21. Upon his resignation, Mettle was paid $5,674.15 in override compensation for his last month of work, $13,333.99 less than what he was entitled to pursuant to the Addendum.

22. Despite being entitled to severance pay, Luminate has failed to pay Mettle the severance he was entitled to pursuant to the Addendum.

23. As of the date of his resignation, Mettle's branch had at least $397.604.00 in its Operating Reserve Account after all expenses were accounted for.

24. As of the date of his resignation, Mettle's division also had about $50,000 in its operating account.

25. All conditions set forth in the Addendum for Mettle to be qualified for severance pay upon his resignation were met.

26. To date, Mettle has received only $5,674.15 in override compensation pursuant to the Addendum and has not received the severance pay to which he is entitled from Luminate.

27. Historically, Luminate has promptly disbursed all excess reserve funds to departing branch managers upon their separation from the company.

## FIRST CLAIM FOR RELIEF
(Breach of Contract)

28. Mettle re-alleges and incorporates by reference all the preceding paragraphs as if fully set forth herein.

29. Mettle entered into the Employment Agreement, and subsequent Addendum with Luminate.

30. The Employment Agreement with its Addendum is an enforceable contract.

31. Further, pursuant to the Employment Agreement and its Addendum, Mettle was entitled to severance pay totaling:

   a. 90% commission for all self-generated loans that have reached the status of "final approval" or "cleared to close" as of Mettle's termination date and that close within thirty (30) days of Mettle's termination date;

   b. 75% commission for all self-generated loans that have reached the status of "initial approval" or that have achieved the UW Decisioned milestone in the Company's Loan Origination System as of Mettle's termination date and that close within forty-five (45) days of Mettle's termination date;

   c. 50% commissions for all self-generated loans that are not eligible for the higher commission detailed in subparagraphs (a)-(b) above and close within seventy-five (75) days of Mettle's termination date; and

   d. $270,000 less all applicable trailing expenses.

32. For the month of January 2025, the total branch production was $3,801,629.00 and Mettle was entitled to $19,008.14 in override compensation for that month pursuant to the Addendum.

33. As of the date of this Complaint, Luminate paid Mettle only $5,674.15 in override compensation for that month, a deficiency of $13,333.99.

34. To date, Luminate has not paid Mettle the severance pay to which he is entitled pursuant to the Employment Agreement Addendum despite the fact that Mettle satisfied all conditions precedent pursuant to the same.

35. As of the date of Mettle's resignation, the branch's Operating Reserve Account held at least $397.604.00 after all appropriately deducted expenses at the time of Mettle's resignation.

36. As of the date of his resignation, Mettle's division also had about $50,000 in its operating account.

37. Mettle has performed all of the obligations required in the Employment Agreement and its Addendum, including those on which Luminate's obligation to issue severance pay may have been contingent.

38. Luminate breached the Employment Agreement by failing to properly pay Mettle the override compensation and severance pay as provided for in the Employment Agreement and its Addendum.

39. As a result, Mettle has been harmed by Luminate's breach in an amount to be determined at trial in this matter, but no less than $283,333.99.

## **JURY DEMAND**

Mettle demands a trial by jury on all issues raised by the pleadings so triable.

## REQUEST FOR RELIEF

WHEREFORE, Mettle requests that this Court enter judgment in his favor and against Luminate, as follows:

A. Damages in an amount of no less than $283,333.99, representing the amounts owed to Mettle pursuant to the Employment Agreement and its Addendum;

B. Pre- and post-judgment interest as provided by law;

C. Reasonable attorney fees and costs associated with bringing this action; and

D. For such other and further relief as the Court deems appropriate.

DATED this 15th day of May, 2025.

                RAY QUINNEY & NEBEKER P.C.

                */s/ Katherine E. Priest*
                Justin T. Toth
                Katherine E. Priest

                *Attorneys for Plaintiff Josh Mettle*

1705404